MARY A. McGRATH, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    October 22, 1926. — November 24, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence*, Contributory, In use of highway, Street railway.

At the trial of an action against a street railway company for personal injuries to a pedestrian who was run into by a street car of the defendant, there was evidence that the pedestrian, who, though seventy-five years of age, had good eyesight and hearing, after standing and conversing near a white pole which indicated a stopping place for street cars and near which others also were standing, started across the street in broad daylight to a white pole on the other side of the street to take a car going in the opposite direction from the car which struck him; that the street was broad and straight, with a number of motor vehicles going by; that the pedestrian, before he started to cross the street, looked both ways on the street; that, as the car which struck him approached, it lessened its rate of speed from twenty-five miles per hour when nine hundred feet away, to twelve or fifteen miles per hour when forty feet away, and was gradually going slower; that the pedestrian was struck as he was crossing the last rail of the track on which the car was approaching; that no gong was sounded in the car and that a municipal order as to control of street cars when nearing pedestrians was violated; that just before the pedestrian was struck a terrific noise of putting on the brakes was heard. *Held*, that the questions of contributory negligence of the pedestrian, and of negligence of the motorman were for the jury.

TORT, for causing conscious suffering and the death of the plaintiff's intestate, John C. McGrath. Writ dated March 20, 1923.

In the Superior Court, the action was tried before *Cox*, J. Material evidence is stated in the opinion. At the close of the plaintiff's evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff on the count for conscious suffering in the sum of $2,200, and on the count for causing death in the sum of $3,375. The defendant alleged exceptions.

*H. F. Hathaway*, for the defendant.

*J. J. Mansfield*, for the plaintiff.

SANDERSON, J. This is an action of tort to recover damages for the conscious suffering and death of the plaintiff's intestate, alleged to have been caused by the negligent operation of a street car of the defendant.

The intestate, who was seventy-five years of age at the time of the accident, with good eyesight and hearing, and with ability to move quickly, was injured when struck by an electric car as he was walking across Dorchester Avenue near the corner of Romsey Street, where he lived, and was in the act of passing over or had passed beyond the second rail of the inbound track on which the car was moving. The accident occurred on a clear day in February, between one and two o'clock in the afternoon. Dorchester Avenue at this point is approximately forty feet wide and practically straight for several hundred feet in either direction. At its corner with Romsey Street, a white pole was maintained as a stopping place for inbound cars to take on or leave passengers. The car involved in the collision was travelling inbound upon tracks the nearer rail of which was about twelve and one half feet from the curbing. Shortly before the accident the intestate was seen talking to a man and standing on the sidewalk near the white pole as people would stand to take a car. At this time the car was about nine hundred feet away, going at a speed of approximately twenty-five miles an hour. There were about four people on the street or on the sidewalk at the car stop. The jury could have found that when the plaintiff's intestate finished

talking, he turned his head looking up and down the street, and started across toward a white post which was on the opposite side, and that when he was ten feet from the pole near which he had been standing, he looked up and down again and moved across, walking slowly, that the car when forty feet from him was going at the rate of twelve or fifteen miles an hour, and there was evidence that it was then slowing down; that immediately before the intestate was struck a terrific noise of putting on the brakes was heard; and that he was almost across the track when hit by the left front end of the car. There was further evidence that shortly before the accident "quite a few automobiles or trucks [were] going by." The intestate was struck just before the car came to a stop, about eighteen feet from the curbing of the sidewalk which he had left. One of the plaintiff's witnesses testified that the intestate "was walking just about where the car would stop if it would come to a complete stop," and that the car did not move more than a foot after it hit him. Several witnesses, who were in a position where they might have heard a gong if sounded, testified that they heard none. The plaintiff also offered certain ordinances of the city of Boston relative to the speed of street railway cars, the duty of the motorman to strike a bell several times in quick succession upon approaching a pedestrian, and the duty of the person in control of a street railway car passing a street to stop the car in the shortest time and space possible on the appearance of danger to any person. The defendant offered no evidence and the jury found for the plaintiff. The sole question raised is, whether the trial judge erred in denying the defendant's motion for a directed verdict.

It is a matter of common knowledge that white posts indicate stopping places where passengers may get on or off. The fact that a group of people were standing where people ordinarily stand to take an inbound car may have led the intestate to think they might be there to take the approaching car. Whether the presence of these people, combined with the fact that as the car approached this stopping place it diminished its speed from twenty-five miles

an hour to twelve or fifteen, and, according to one witness, to seven or eight miles an hour, made him entertain the belief that the car was to make a stop at this post, we have no way of knowing. The evidence does not disclose whether the motorman was actually intending to make this stop. It does not appear that any one desiring to become a passenger gave a signal to the motorman to stop or that any one left the car at this point. In this case, as in *Healy* v. *Boston Elevated Railway*, 235 Mass. 150, all of the facts are not in evidence. There was no statement from the intestate and the motorman did not testify in either of the cases. We do not know whether, when the plaintiff's intestate looked in the direction from which the car was coming before he left the sidewalk and again when he was ten feet from the white post, he saw the car approaching and formed a judgment that he could safely cross; or whether, if he did form such judgment, he was justified in so doing, because of the distance of the car from him and the speed at which it was then approaching and because of his right to rely to some extent on the expectation that the motorman would not run into him, or for any other reason. No witness testified to the distance of the car or its speed when the intestate was at the places where he looked. We cannot say as matter of law that upon the admitted facts or upon evidence by which the plaintiff was bound contributory negligence of the intestate was established. The questions, whether the plaintiff's intestate was negligent in deciding to cross the street after looking in the direction from which the car was coming before he started and again when part way across, and whether he should have waited for the car to go by or should have walked faster, and such other considerations as are involved in the issue of his due care, were for the jury. *Chisholm* v. *Newton Street Railway*, 214 Mass. 281. *Harrington* v. *Boston Elevated Railway*, 214 Mass. 563, 566. *Scherer* v. *Boston Elevated Railway*, 238 Mass. 367.

The evidence tending to prove that the motorman could have seen the intestate all of the time he was walking slowly eighteen feet from the sidewalk to the place of collision, and that the sound of putting on the brakes to stop was first

heard immediately before the accident, would justify the jury in finding that the motorman was careless, either in not seeing the intestate as soon as he should have seen him, or in not trying to stop the car in time to avoid an accident. The defendant could also have been found to be negligent upon the evidence tending to prove a violation by its motorman of a city ordinance. All exceptions argued have been considered. .

*Exceptions overruled.*