VIRGINIA O'LEARY vs. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   December 12, 13, 1934. — January 28, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Negligence*, Street railway.

A finding of negligence on the part of the defendant's motorman was not warranted on all the evidence at the trial of an action against a street railway company for personal injuries sustained by a girl, about six and one half years of age, when she was struck by a street car of the defendant while crossing a street, including evidence that when she reached the first rail of the nearer tracks, she saw the car approaching slowly about eighty-eight feet away on the farther tracks; that she then started across; and that when she had crossed the first rail of the farther tracks she saw the car coming quite fast and tried to go back, but was struck by it.

TORT.   Writ dated January 15, 1930.

The action was tried in the Superior Court before *Walsh,* J.  Material evidence is stated in the opinion.  The judge ordered a verdict for the defendant and reported the action for determination by this court.

*M. Palais,* (*W. R. Scharton* with him,) for the plaintiff.
*H. F. Hathaway,* for the defendant.

CROSBY, J.   This is an action brought to recover for personal injuries received by the minor plaintiff as the result of being struck and knocked down by an electric car of the defendant at the intersection of Huntington Avenue, Ruggles Street and Louis Prang Street, in Boston. By reason of the injuries it was necessary to amputate the plaintiff's right foot above the ankle.

A plan showing the place of the accident was introduced in evidence at the trial. Huntington Avenue at the place of the accident runs northerly and southerly, is practically straight with very little grade, and its width between the sidewalks is seventy-five feet. There is a reserved space in the center of the avenue where two sets of tracks of the defendant are located. The accident happened October 3, 1929, when the plaintiff was about six and a half years of age. She testified that at the time of the accident she lived with her parents at 10 Museum Road, and attended a school on Parker Street; that she was familiar with the streets and with the cars running on Huntington Avenue; that during two and one half years she had occasion to cross the street car tracks four times a day when she went to school. She further testified that she attended school on the day of the accident and left the school to go home; that she went up Ruggles Street and stopped at the corner of that street and Huntington Avenue to let some automobiles go by; that she saw a street car go by and then walked up to a place near the outer rail of the inbound car tracks; that she saw an outbound car opposite an apartment house, diagonally across and about eighty-eight feet from where she was standing and not going very fast; that she thought it was going to stop and started to walk across; that when she got over the first rail of the outbound car track she saw the car coming quite fast and she tried to go back, but the car struck her; that she looked to her right before starting to cross the tracks and saw this car, and "she thought she had lots of time to get by." On cross-examination she testified that she understood the questions asked her and was not confused by the questions asked by the defendant's counsel and understood what he said. She further testified on cross-examination that a little boy, younger than she, who attended the same school, came along with her about half way and then ran ahead; that at one time he was near a car that slowed down for him, and she was then "about the distance from her place on the witness stand to the clock on the opposite wall [about forty feet]." She further testified that she knew

there was a place across those tracks where she was supposed to go, and that she ought not to cross at any other place except where the crossing was; that on the day of the accident she could see the crossing, and she was alone when she got to the corner of Ruggles Street and Huntington Avenue; that she had ridden on cars with her parents and others, and knew that cars have to run on rails; that she knew she could not get hurt by one of those electric cars unless she got on the track or in the path of the car; "that the car could not leave the rail the same as an automobile does." She further testified that when she saw the outbound car it was not going very fast; that she thought it was going to stop and started to walk across; that she knew if she stepped in front of it she would get hurt, and also if she got close to the rails on which the car was going she would get hurt; that she knew she had to put herself in a position where that car would hit her while it was still on the rails for her to get hurt; that the car was in plain sight when she stepped on the first rail of the outbound track and she could see it and could see how close it was to her; that she saw it coming and knew it was coming, and she kept on going; that she did not stop until she got hit; that up to the time when the car was close to her she hurried a little; that she did not start to hurry when she was on the first rail but kept crossing the first rail as if there was not any car coming at all, although she knew it was coming and could see it coming; that she had passed over the inbound track of two rails; that she got hurt when she was stepping on the first rail of the outbound track; that the car was then so close to her she could almost reach out and touch it; that she started to hurry then; that she was not running at that time and did not stop at all; that when she stepped up on the first rail of the outbound track it was three or four feet away. On redirect examination she said that when this outbound car was so close she could almost touch it she was over the first rail of the outbound track, and when she realized the car was so close to her she tried to go sideways to get out of the way by stepping back, and was

struck; and that she did not hear any bell or gong sounded on the outbound car.

One Matson, called as a witness for the plaintiff, testified in substance that on the day of the accident he was standing on the sidewalk near the wall of the corner of the apartment house; that he knew the plaintiff and saw her leave the sidewalk to cross Huntington Avenue; that at the time she left the sidewalk he saw no inbound car near her; that there was nothing to obstruct his vision; that he also saw her when she was half way across Huntington Avenue while he was standing on the opposite corner; that he saw a little boy with her who came right across the tracks to the other sidewalk; that at that time he saw an electric car stop near the stop pole and the plaintiff had already started to leave the sidewalk; that he saw this car start toward Brookline and when it was about three fourths of the way over the cobblestone part of the intersection he heard women screaming.

No witness called by the plaintiff testified to having seen the collision. Apart from the question whether the plaintiff is precluded from recovery because of contributory negligence, there is no evidence which would warrant a finding that the operator of the car was negligent in any respect in the operation of his car. From the testimony of the plaintiff it appears that she stepped upon the outbound rail at about the time the defendant's car reached the crossing. There was no evidence to the contrary. In these circumstances the evidence would not warrant a finding that the accident was due to any negligence on the part of the operator. The trial judge on the defendant's written motion filed at the close of the plaintiff's case properly directed a verdict for the defendant. We have examined all the evidence and the exceptions relating to the exclusion of evidence and find no reversible error.

In accordance with the stipulation of the parties, judgment is to be entered on the verdict

*So ordered.*